ROBERT WALLACE v. OHIO INSURANCE COMPANY.

The rule of one-third new for old, in the law of the marine insurance, is ap‑
plicable to insurance of steamboats on the western waters.

THIS was an action on a policy of insurance, taken by the de-
fendants upon the steamboat Hercules, for the sum of eight thou-
sand dollars. Cincinnati was the home of the Hercules and of the
plaintiff. She was run against by the B. Franklin and injured,
but was nevertheless brought to Cincinnati and there repaired.
The whole amount of charges claimed by the plaintiff for repairs
was eleven hundred and thirty-six dollars. Of this sum six hun-
dred and forty-seven dollars was admitted to be for repairs prop-
erly chargeable as such. The residue of the charges were for
kitchen and table furniture, and for wages to captain, mate, stew-
ard, cook, and clerk. By the terms of the policy the insurers
were not to be charged unless the loss amounted to ten per cent.
upon the amount insured. The insurers refused to pay, because
they contended that the loss, when reduced, according to the ma-
rine law, one-third, upon the doctrine of new for old, did not
amount to eight hundred dollars, and because the items charged
above the sum of six hundred and forty-seven dollars were not
legally chargeable against the insurers. The action *was [235
an amicable one, and the facts were all agreed, reducing the case
to the points here stated, and agreeing also that the boat was not
improved by the repairs. It was adjourned here for decision from
the county of Hamilton.

CASWELL and STARR, for plaintiff:
The agreed case contains an admission of all the facts set forth
in the declaration, so far as they are necessary for the adjudication
of the merits of this cause. Only one allegation of the declaration
is denied, and that is rather a conclusion drawn from the premises
stated than the direct averment of a fact. The statement is, that
the loss for which the insured claims indemnity exceeds ten per
cent. upon the value of the property insured. Upon the correct-
ness of this statement the cause of the plaintiff is supposed to rest.
The value of the subject insured, as noted in the margin of the
policy, is eight thousand dollars; unless, therefore, the loss amounts

to eight hundred dollars the insurers are not liable, by the terms of the policy as set forth in the declaration. According to the agreed case the plaintiff is to have judgment for the amount of the bill of particulars, provided the loss, when adjusted by the court, amounts to ten per cent., not upon the amount insured, but on the value of the subject insured. Small as is the amount in controversy in this suit, the principles to be settled are of vast importance to the commercial interests of the western country.

We are authorized by gentlemen of the highest standing, and having access to the highest sources of information, to say that the annual marine risks taken in the city of Cincinnati alone exceed three millions of dollars! And yet this is the first instance in which the judicial tribunals of the state have been called upon to give a construction to a policy of insurance or adjust a loss. This, therefore, being a case of the first impression is important, inas-much as the questions decided will serve as precedents in other cases, which may arise upon similar policies.

In order to arrive at a just conclusion in this case it will be necessary to discuss several questions:

1. How far shall the adjudication of foreign courts, and those of our sister states, be adopted as the rule of decision here.

**236]** *2. Whether the expenses of the master, pilots, clerk, mate, steward, cook, and one deck-hand, while the boat was repairing, shall be allowed.

3. Whether a deduction is to be made upon the bill of repairs, one-third new for old.

4. If such deduction is to be made, shall it extend to the whole bill of repairs, or to the furniture only?

If the wages of the master and crew are not allowed, as an item, upon which an adjustment of a partial loss is to be predicated, and a deduction of one-third new for old is made upon the bill of repairs, the loss thus adjusted falls within the ten per cent. But if we are allowed the wages and expenses of the crew, and no deduction is made except upon the furniture, or if the item of wages is rejected, and no deduction is made upon the residue of the bill of particulars, in either of the latter cases the loss will exceed ten per cent., and the plaintiff is entitled to judgment.

In addition to the usual allegations and proof in cases upon policies of insurance, the declaration in this case contains several special averments, supposed by us to be peculiarly applicable to

policies upon steamboats navigating the western waters, all of which averments are admitted to be true, though their importance in the case will be denied.

It is admitted that the loss was occasioned by one of the perils insured against, that the injury done to the boat was of a permanent character, and that no repairs can render her of the same value as before the perils were incurred; that the expenditure on the part of the plaintiff, in order to enable him to put his boat in a running condition was necessary, reasonable, and proper; and further, that the insured could not safely discharge the crew; that to have done so would have jeopardized the profits of the residue of the running season of the boat (for which she was insured), and might have thrown her out of employ. Upon these admissions the plaintiff is entitled to recover, unless some unbend·ing rule of law is interposed to bar that right.

On the part of the defendant it will be contended that, by the marine law one-third is to be deducted, " new for old," and that the expenses of the crew while the boat was repairing can not be allowed, inasmuch as the boat arrived at Cincinnati, where she belonged, where the repairs were *made, and from whence she [237 commenced running her regular trips; and that the entire body of the law of marine insurance is to be adopted as the rule of decision in this court, without regard to our situation, or the peculiar navigation it is intended to protect.

We are willing· that the roots of this exotic shall strike deep in our soil; but we ask the court to prune its shoots, as they spring up, to suit our necessities. We are willing to engraft its healthiest scions upon a vigorous native tree, but we can not safely lash our boat to its antiquated trunk. We contend that insurance upon steamboats forms a new era in the history of the commercial world, and that the ancient rules of decision, with reference to a different subject, can not safely be adopted in detail. Many of them are arbitrary, and not applicable to the state of trade, or the customs of navigating interests in the western states. The subjects of insurance, and the course of trade, are so widely different in their nature from those in which the rules were established, that it will be impossible to make anything like a universal application of them. We have insurance upon flat-boats, keel-boats, and upon steamboats. These differ as widely from each other as the navigation of tide-waters by ships differs from that of a steam-

boat, steering her course among the sand-bars, the drift, snags, and sawyers of the Mississippi, and stemming the rapid and ever-changing currents of the innumerable bayous, which serve as out-lets to this father of rivers.

What have the technical and arbitrary rules of marine insur ance to do with such a navigation as this? That certain great and leading principles of insurance are applicable alike throughout the commercial world, and that many others may, in some degree, be made applicable to the navigation of the western waters, we readily admit; but we say they can not be adopted without many qualifi-cations. Some of these rules were established without much reason, and for the mere purpose of having a rule. They have been applied to other cases for the sake of uniformity. So far, therefore, as they are consistent with the principles of equity, and can be made applicable to the peculiar nature of our trade, they should be adhered to, and no further.

238] *There is one principle which we think is universal in its application to all policies of insurance, and that is "that the con-tract for insurance is substantially a contract for indemnity." 3 Kent's Com. 203; Philips on Insurance, 1; 1 Marshall on In-surance, 1; Parke on Insurance, 2; Lex Mercatoria Americana, 254; 2 Blackstone Com. 458.

An adhesion to this fundamental doctrine will secure to the plaintiff a judgment to the full extent of his loss, unless he has for-feited that claim by some act of his own or of those in his employ. The agreed case shows that no blame was attached to the insured, who, in this case, was the master, or to the crew, but, on the con-trary, it appears that they labored within the terms of the policy, for the safety of the subject insured. The rule which has ob-tained, in the courts, of deducting one-third new for old, must be predicated upon the idea that when a ship has undergone repairs, the new part which has taken the place of the old, is better than the old by one-third, and consequently should be deducted; other-wise the insured might speculate upon his losses, at the expense of the insurer. This is in accordance with the rule for which we contend "that a policy of insurance is to be construed as a con-tract of indemnity." We presume that experience has shown, that, taking the average injuries to which ships are subject, they are of a character that, when those injuries are repaired, the ship is more valuable than when the perils were incurred. For, in the

220

Wallace *v.* Ohio Insurance Co.

English courts, no deductions are made, if a partial loss is sustained by a ship on the first voyage, because no presumption can arise, that a new ship is benefited by repairs. And, even in the United States, no deduction is made for a new anchor, the reason of which is obvious, that a new anchor is no better than an old one. If this rule of deduction is traced to its source, we think it will be found that it was originally applied to the sails and rigging of a ship, and to them only. Subsequently it has been applied to the entire repairs. We contend, as a general rule, that when a steamboat, navigating the western waters, sustains an injury from external violence, she can not be made as valuable as before those perils were incurred. In the present case, it is admitted that the injury was of a character permanently to affect the value of the boat.

*If this policy, therefore, is to be construed as a contract of [230] indemnity, we are entitled to the expenses of repairs without deduction, for it is conceded by our opponents that no more money was expended than was absolutely necessary for the repairs of the boat, to put her in a running condition. We think, therefore, that the rule which has been adopted in the courts of the United States and in foreign courts, of deducting one-third without regard to the nature of the injury, is not calculated to do justice, and that this court ought not to adopt it.

We think it also clear that we are entitled to be paid the wages and expenses of the crew of the boat while she was repairing. It is a well-settled principle of the marine law that when a ship is compelled, from distress, to put into a port to repair, in order to enable her to prosecute her voyage, the insured is entitled to recover the expenses of wages and provisions while repairing; but it will be contended that because the boat in this case arrived at Cincinnati, where she belonged, and which is a usual place of discharging freight and passengers, they are not liable. We presume the case of Dunham and Bool *v.* Com. Ins. Co. of N. Y., reported in 11 Johnson, 315, will be relied upon as well to sustain this proposition as the one already discussed. In that case, the ship Orbit was insured at and from New York to Liverpool, and at and from thence to the port of discharge in the United States. During the voyage she met with very severe gales of wind and heavy seas, which occasioned considerable damage. She eventually arrived at Liverpool, discharged her freight, and went into dry dock to repair. The judge in that case refused to allow the

Wallace *v.* Ohio Insurance Co.

expenses of the captain and crew while the ship was repairing, and principally upon the ground that the ship arrived at her port of discharge, delivered her cargo, and thereby earned her freight.

The judge in this case is made to say that unless these expenses of repairs can be brought into general average, the underwriters on the ship can not in any case be made liable. To the correctness of this doctrine we can not subscribe, but the circumstances of the two cases are so different that we need not combat it. It is conceded by the judge that in the case of Walden *v.* Leroy, 2 240] Caine, 263, that the expenses *incurred for wages and provisions during the detention of a vessel for repairs was a proper subject of general average, and that the insurers upon the ship were liable. Suppose it were conceded that unless the expenses of wages and provisions were items of general average, in cases of insurance, for a particular voyage, the insurers would not be liable, yet the rule could not be safely applied here. The insurance upon the steamboat Hercules was not an insurance for a particular voyage, but for the term of six months. Any injury, therefore, which is within the terms of the policy, and which shall compel her to put into a port for repairs during the time for which she is insured, must be likened to a case when a ship, on a particular voyage, is compelled, from distress, to put into a port for a similar purpose, in order to enable her to prosecute her voyage. If a ship, during the voyage, or a steamboat, during the season for which she is insured, is compelled to put into a port for repairs, the insurers are liable to pay the expenses during the time necessary to make those repairs. It is important to the owners of steamboats that they should be able to run during the entire season for which they are insured, or that a ship should be able to prosecute her voyage and earn her freight. The principle of general average can not be made to apply to a case like that of the Hercules, even if the doctrine of Justice Thompson be correct. See also the case of Paddleford *v.* Boardman, 4 Mass. 432; Power *v.* Whitmore, 4 Maule & Selwyn, 141; Plummer *v.* Wildman, 3 Maule & Selwyn; 3 Kent's Com. 188, 250.

We might also urge the necessity of retaining the crew on board for the safety of the boat. Suppose the entire crew had been discharged, a rise in the river, the boat driven from her moorings, and a loss had been sustained, would the insurers have been liable

on their policy for such loss? We think it a condition annexed to all policies of insurance upon ships and steamboats that they shall be well manned and found, or the insurers are not liable for any loss which may happen.

According to the view we have taken of the case, the plaintiff is entitled to judgment for the entire bill of repairs of the Hercules, and the expenses of the crew while she was repairing. Whether a deduction should be made upon the bill of furniture, is respectfully submitted to the court without argument.

*HAMMOND & GARRARD, for defendants:                [241
Two points are raised for consideration in this case:

1. Is the doctrine of one-third new for old repairs, applicable to repairs on steamboats?

2. Where the repairs are made at the home of the boat, can a charge be made against the insurer for wages and provisions?

The marine law establishes both these propositions in favor of the insurer. But it is contended that neither ought to be applied to insurance on steamboats. The argument of the plaintiff's counsel does not seem to us satisfactory. The reason for the rule, new for old, is explained in all the elementary books. It does not proceed upon the ground of actual advantage in the particular case. But upon the ground that if, in every case, the actual damage should be inquired into, controversy would be endless. 3 Mason, 73.

If the boat be not injured half her value, she can not be abandoned, but must be repaired at the charge of the insurer. If a steamboat is ever worth. repairing, there must be cases in which, when repaired, her value is increased. If this be conceded, there is an end of the argument. The reason is as strong for establishing the rule in regard to steamboats as to ships at sea.

The reason of the rule, respecting wages and provisions, is also applicable to the repairs of steamboats. It is not varied by the fact that that insurance is taken for a period of time certain. When the repairs are made at home, there is no voyage on hand; no freight to earn, no cargo to preserve. And it is because, when repairs are made on a voyage, when all these require attention, that the expenses are allowed.

The value, furnishing the rule for abandonment, for injury, is the worth of the vessel when the accident occurred. 3 Mason, 71.

72.  A steamboat very old and worn is worth repair.  The damage is less than half her value.  She is injured near her home, and is brought there for repair.  Repairing does not make her as good as new, but more valuable than before the injury.  The plaintiffs claim that she shall be thus improved at the charge of the insurer, and that a mate, steward, cook, captain, clerk, pilot, 242] and deck hands, *shall be maintained at the insurer's expense during the repairs.  The argument would as well cover firemen and engineers, for when repaired and ready for navigation the boat can not move without them.  We think it untenable.

By the COURT:

In its practical application, the whole doctrine of insurance is new to us.  We can not, therefore, undertake to settle principles so as to conclude us, should further litigations arise, and further investigations diffuse new lights upon the subject.

The question now necessary to decide is, whether an established doctrine of the law of maritime insurance shall be applied to the case of insurance upon steamboats navigating our interior rivers.  The plaintiff contends that it is wholly inapplicable, and should, for that reason, be rejected.

It is admitted that if a sea vessel be injured to an extent less than one-half her value, she shall be repaired at the expense of the insurer.  But in that case, one-third of the charges of repair shall be borne by the owners.  The reason upon which the rule seems to be founded is, that the repairs place the vessel in a better condition than when she was insured.  In this case, it is agreed that the vessel was not improved by the repairs, and the drift of the plaintiff's argument appears to be that when the reason for the rule ceases, its obligation is at an end.  We understand that the rule is of universal application, and that it is not one adapted to each particular case.  It is so laid down by Judge Story, in Peel and others *v.* Merchants' Insurance Co., 3 Mason, 73.

"The rule itself is somewhat arbitrary, and not founded upon an exact calculation with reference to the particular case.  The ship may be almost entirely new, and then the reason for the deduction would altogether cease.  The ship may be very old, and the reason for a much greater allowance would apply.  The general principle upon which the rule is founded is, as stated by Magens, that the underwriters ought to pay for the actual damage or

Wallace *v.* Ohio Insurance Co.

injury, but not for the wear of the things lost or injured; and, therefore, proper allowance ought to be made for the difference in value between the new and the old. But if this difference were to *be ascertained in every particular case by actual inspection [**243** and estimates, there would be no end to controversies, and, therefore, general usage, which the law follows, as founded on general convenience, has applied a certain rule to all cases, not upon the notion of perfect justice, but as generally reaching, in substantial equity, the mass of them.

The doctrine, as here asserted, makes it wholly immaterial whether, in the case before us, the steamboat was actually improved or not by the repairs. So we must declare that the principle, new for old, is applicable to steamboats, or else that fact in the case can have no weight in deciding our judgment.

We are not prepared to say, that, in general cases, steamboats, when not injured more than half their value, at the time of injury, may not be greatly improved by repairs. That is, improved from the actual condition when the injury was sustained. We think this may be the case, and if so, we are not now willing to declare that this branch of the law of marine insurance should not extend to steamboat insurances.

If we understand the counsel for the plaintiff rightly, they propose that we shall take upon ourselves to revise the whole doctrine of marine insurance, and retain part as properly applicable to the case of steamboats, and reject part as wholly inapplicable. We think this work, if necessary to be performed, should be undertaken where there is more experience and knowledge on the whole subject. Steamboats commenced running in the waters of New York before they did in the western waters. The city of New York is the great commercial emporium of the Union. Her jurists, both bench and bar, are eminent for their deep and sound learning. Questions of insurance must have arisen, yet neither in the books of reports, nor in the excellent elementary treatise of Chancellor Kent, have we any intimation that the general doctrines of the law of marine insurances are inapplicable to steamboat insurance. Steamboats have been in use in England for years. We have no information that the principle now pressed upon us has been urged there. Under these circumstances we hold it safest to adhere to the doctrine as we find it settled, and administer it as an entire system, to those who claim at our hands the administration of a

**244]**   part of it.   When the amount of one-third is deducted *from the whole charge for repairs, the loss is reduced to a less sum than eight hundred dollars.   This not being ten per cent. upon the actual value, the terms of the policy do not entitle the plaintiff to recover.   The whole case is thus disposed of, and it is unnecessary for us to say anything upon the other points presented in it.   Judgment for defendants.